[Civ. No. 16295. Fourth Dist., Div. One. Nov. 15, 1977.]

In re CYNTHIA K., a Minor.
JAMES E. et al., Petitioners and Respondents, v.
DONNA K., Objector and Appellant.

---

**COUNSEL**

Appellate Defenders, Inc., under appointment by the Court of Appeal, Paul Bell and Allen M. Gruber for Objector and Appellant.

Shadle, Hunt, Appelt & Hagar and James L. Hagar for Petitioners and Respondents.

---

**OPINION**

**COLOGNE, J.**—The petition of James E. and Lana E. to declare Cynthia K. free from the custody of her mother, Donna K., pursuant to Civil Code section 232, subdivision (a)(1) was granted on

the grounds Ms. K. evidenced her intent to abandon Cynthia.[1] After a full hearing the trial court made appropriate findings and granted the petition. Ms. K. appeals.

Ms. K. gave birth to Cynthia on December 4, 1973. This was her fifth child, four of whom have different fathers and none of whom reside with her. She has made no effort to see the two older children for more than 10 years and does not know where they are. Her third child was born in Canada and was released for adoption by her years earlier. The fourth child was born in Washington and died. She remembers only the first name of the father of the child born in Canada and cannot recall the name of the father of the child born in Washington. She married John L. W. in 1962 and has been separated from him for many years. He does not contest these proceedings and has signed a release of any interest in the child. The natural father is Alfred K. He has a long criminal record in both Arizona and California. He has not lived with Ms. K. since she was two months pregnant and has never seen the child. His present whereabouts is unknown.

On January 9, 1975, when Cynthia was about 13 months old, Ms. K. left the child with Ms. Alva S., a stranger, in Escondido. She gave Ms. S. no address or telephone number where she could be reached. Two days later Ms. S. gave the child to her sister, Lana E., who has cared for her continuously since that date. The county social welfare department was advised of the situation and it petitioned the court to have Cynthia made a ward of the court. Cynthia was then formally placed with James and Lana E. as foster parents.

Ms. K. contacted James and Lana E. about a week after she left the child and then did not see the child again or communicate with her or the E.s for a period of over six months. During that period she did write a letter to the social worker expressing some interest.

---

[1]Civil Code section 232, subdivision (a)(1), sets forth the grounds upon which parental rights can be terminated for voluntary abandonment. The statute provides in pertinent part:

"(a) An action may be brought for the purpose of having any person under the age of 18 years declared free from the custody and control of either or both of his parents. . . .

"(1) Who has been left . . . by his . . . parents . . . in the care and custody of another for a period of six months . . . without any provision for his support, or without communication from such parent or parents, with the intent on the part of such parent or parents to abandon such person. Such . . . failure to provide, or failure to communicate shall be presumptive evidence of the intent to abandon. . . . If in the opinion of the court the evidence indicates that such parent or parents have made only token efforts to support or communicate with the child, the court may declare the child abandoned by such parent or parents. . . ."

Ms. K. went to San Diego and was unable to find work. After advising the social welfare department she was leaving for Pennsylvania she hitchhiked there in April and did find work. In late July or August 1975 she hitchhiked back to California in order to make an appearance in superior court on a drug charge. In the year following her return to California she saw Cynthia four times which were token visits made at the urging of her attorney. She has not seen the child since March 1976.

Ms. K. has had numerous jobs in the last five years, none of which lasted over six months, and she has moved from city to city throughout the United States. She had worked as a dancer and waitress in various bars, worked as a maid, and was on welfare. She remembered Cynthia with a present on the Easter and Christmas before trial but except for those occasions did not remember any special days while Cynthia was in the foster home. She never remembered Cynthia on her birthday with a gift, card or telephone call. She does not have any arrangements for her care and has no plans in that regard for the future.

At the time originally scheduled for trial Ms. K. failed to appear saying she had no money for transportation. The trial was continued. At the later trial she gave no explanation for her absence. A matter of further concern to the judge was why she had left the child with strangers in the first instance. No explanation was offered.

■ Ms. K. correctly asserts the proper standard of proof to be applied in a Civil Code section 232 proceeding to free a child of parental custody and control is a showing of clear and convincing evidence.

The courts have long taken the position that the rights to conceive and raise one's children have been deemed essential, basic civil rights of man and rights far more precious than property (*Stanley* v. *Illinois,* 405 U.S. 645, 651 [31 L.Ed.2d 551, 558-559, 92 S.Ct. 1208, 1212]). ■ The involuntary termination of the relationship of a natural parent to her children must be viewed as a drastic remedy which should be resorted to only in extreme cases of neglect or abandonment (*In re T. M. R.,* 41 Cal.App.3d 694, 703 [116 Cal.Rptr. 292]). In *In re B. G.,* 11 Cal.3d 679, at pages 698 to 699 [114 Cal.Rptr. 444, 523 P.2d 244], the Supreme Court held that in a Civil Code section 4600 proceeding dealing with granting custody only to a nonparent, as opposed to terminating forever the rights of a parent as is presented here, there must be "a *clear* showing that such award is essential to avert harm to the child." (Italics added.) While that case did not specifically concern itself with the standard of proof, its language was used as the basis for that principle in *In re Robert P.,* 61

Cal.App.3d 310, 319 [132 Cal.Rptr. 5]. There the court said, "we feel that the general language of . . . *In re B. G.,* requires us to apply the standard of 'clear and convincing,' rather than 'preponderance of the evidence.' " *In re Robert P., supra,* however, involved a Welfare and Institutions Code section 600 dependency hearing. We can find no reason why a less stringent standard of proof should be applied to a freedom from custody hearing where rights are totally and permanently terminated, than would be applicable to a dependency hearing under Welfare and Institutions Code section 600, where temporary custody only is involved.

We are confronted with *In re Rose G.,* 57 Cal.App.3d 406 [129 Cal.Rptr. 338] which considers a section 232 proceeding similar in every respect to the one we face here. At page 420 the court states: "Considering the importance of the opposing interests in such hearings, that of the government (as *parens patriae*) or other interested person on the one hand, and the natural parents on the other, it would appear appropriate for the burden of proof to remain with the petitioner in section 232 proceedings, i.e., with the party seeking to terminate the parent-child relationship. This burden of proof is that of proof by a preponderance of the evidence. (Evid. Code, § 115.) In amending Civil Code section 232, subdivision (a), the Legislature provided for a beyond-a-reasonable-doubt standard in subdivision (a)(7), but set forth no such burden-of-proof standard in subdivision (a)(1), which is the successor to subdivision (a) of section 232 involved in the case at bench. We see no reason, therefore, for a judicial imposition of a burden-of-proof standard higher than that of a preponderance of the evidence."[2]

We are unable to reconcile this statement with the standard applied in *In re Robert P., supra,* 61 Cal.App.3d 310. The relative permanency of rights taken by a Civil Code section 232 proceeding as compared to those taken by a Welfare and Institutions Code section 600 proceeding compels us to reject the standard called for in *In re Rose G., supra,* 57 Cal.App.3d 406 and adopt that applied by *In re Robert P., supra,* 61 Cal.App.3d 310. The importance of rights being terminated by this proceeding and the language of *In re B. G., supra,* 11 Cal.3d 679 demand

[2]Since this opinion, section 232, subdivision (a)(7) of the Civil Code was amended by the Legislature to read as follows: "(7) Who has been cared for in one or more foster homes under the supervision of the juvenile court, the county welfare department or other public or private licensed child-placing agency for two or more consecutive years, providing that the court finds by clear and convincing evidence that return of the child to his parent or parents would be detrimental to the child and that the parent or parents have failed during such period, and are likely to fail in the future, to
"(i) Provide a home for said child;
"(ii) Provide care and control for the child;

we call for the burden of proof to be clear and convincing (see *In re George G.,* 68 Cal.App.3d 146, 165, fn. 14 [137 Cal.Rptr. 201]).[3]

A final case in point is *Alsager* v. *District Court of Polk Cty., Iowa,* 406 F.Supp. 10, 25, where, under similar circumstances, it was held the fundamental right to family integrity deserves at least a standard of proof by clear and convincing evidence.

The issue of proper standard of proof was not raised below and it should have been raised there to provide a proper basis for raising the issue on appeal (*Panopulos* v. *Maderis,* 47 Cal.2d 337, 340-341 [303 P.2d 738]). Under the circumstances, however, there is nothing in the record to suggest the trial judge applied the wrong standard. ■ The evidence here is extremely clear and convincing that Ms. K. had no real interest in her child and did in fact abandon the child. The court properly found Cynthia to be free from custody and control of her parents based on the more stringent standards.[4]

Judgment affirmed.

Brown (Gerald), P. J., and Staniforth, J., concurred.

---

"(iii) Maintain an adequate parental relationship with the child; and
"(iv) Maintain continuous contact with the child, unless unable to do so.
"Physical custody of the child by the parent or parents for insubstantial periods of time during the required two-year period will not serve to interrupt the running of such period."
If we adopt the *In re Robert P.* standard for the other subdivisions we will conform the standard of proof for all subdivisions and it is apparent the standard should be the same. Additionally, we note the standard would meet the test required by *Stanley* v. *Illinois, supra,* 405 U.S. 645 and *In re B. G., supra,* 11 Cal.3d 679, and provide a thread of uniformity in the standard of proof in all cases which attempt to sever the rights of natural parents to their children.

[3]This is not a criminal proceeding nor does it involve incarceration and concomitant loss of liberty so we must reject the thought the standard of proof should be beyond a reasonable doubt as suggested by the appellant.

[4]In summarizing the evidence the judge did say, "I must confess it was a very close case on the facts," but this is a comment we often hear from judges even in criminal cases where the standard of proof is beyond a reasonable doubt. It provides no basis for assuming the judge felt there was a bare tipping of the scales or that a preponderance of evidence standard was applied (cf. *In re B. G., supra,* 11 Cal.3d 679, 699). It is an assuasive statement for the benefit of the losing party and cannot be substituted for the facts in the record, abundantly clear and convincing, which support the decision (see *Estate of Bernard,* 206 Cal.App.2d 375, 382 [23 Cal.Rptr. 828]).